# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CR11-02342-TUC-DCB(JM) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Jose Guadalupe Vasquez-Corrales, | |
| Defendant. | |

A Motion to Suppress Statements (Docket 22) filed by Defendant Jose Guadalupe Vasquez-Corrales ("Vasquez-Corrales") was heard by Magistrate Judge Marshall on April 3, 2012.[1] Defendant was present at the hearing and represented by counsel. Two witnesses were presented by the Government: U.S. Border Patrol Agent Justin Clare and Supervisory Border Patrol Agent Paul Steinkuller. The witnesses were examined, cross-examined, and questioned by the Court. Having considered the matter, the Magistrate Judge submits the following Findings of Fact and Conclusions of Law and recommends that Defendant Vasquez-Corrales's Motion to Suppress be granted to the extent described below.

. . . .

. . . .

. . . .

. . . .

. . . .

---

[1] The Magistrate Judge ordered that a transcript of the proceeding be prepared.

## I. **FINDINGS OF FACT**

During the evening of June 9, 2011, Border Patrol Agents Justin Clare and John Walter, who are both Emergency Medical Technicians, received a radio report of a person in distress in a remote desert area located approximately 15 or 20 miles north of the international border and just north of Federal Route 24 in Southeast Arizona. After receiving the radio report, Agents Clare and Walter drove their vehicle as close to the reported location as they were able and then, taking their medical equipment with them, walked another mile or mile and a half until they located a severely dehydrated individual later identified as Defendant Vasquez-Corrales.

When the agents found Vasquez-Corrales, they rendered aid and administered fluids intravenously. Once Vasquez-Corrales was lucid and able to respond to questioning, Agent Clare asked him where he was from, whether he was in the United States legally, and if he had documents that would allow him to be in the United States. Vasquez-Corrales told the agent that he was from Mexico, that he was in the United States illegally, and that he did not have documentation which allowing him to be here.

After determining that ATVs could not reach their location and that Vasquez-Corrales was able to walk, Agent Clare and Agent Walters walked Vasquez-Corrales approximately a mile to a mile and one-half back to their service vehicle, arriving around midnight. The agents were armed but did not unholster their weapons. When they reached their vehicle, they were met by two ATV agents and Supervisory Agent Steinkuller, who had been waiting at that location for approximately an hour and a half.

Vasquez-Corrales was directed to sit on an ATV trailer and, while Agents Clare and Walters stored their equipment, Agent Steinkuller conducted a field interview and completed Form I-826. (Exhibit 1). Form I-826 is designed to obtain biographical information, such as name, age, date of birth, parents' names, and country of origin, along with information about where and when the individual entered to the United States. Under the heading "Solicitud De Resolution," the form also informs the individual in Spanish that they have the

right to go before an immigration judge, seek asylum, or to admit that they are in the United States illegally and wish to simply return to their country of origin.

In this case, without reading Vasquez-Corrales his rights, Agent Steinkuller reviewed with Vasquez-Corrales the information contained on the I-826 field processing form and explained the options offered in the form. After providing the requested information, Vasquez-Corrales elected to admit that he was in the United States illegally and requested return to his country. Vasquez-Corrales then initialed the applicable paragraph and signed the form. Agent Steinkuller transported Vasquez-Corrales to the nearest paved road, Federal Route 19, where he transferred custody of Vasquez-Corrales to another agent who transported him to the Law Enforcement Center at San Miguel for further processing.

## II. **CONCLUSIONS OF LAW**

### A. *Miranda*

The Fourth Amendment prohibits "unreasonable searches and seizures" by the government. *Terry v. Ohio*, 392 U.S. 1, 9 (1968). An investigatory stop need not be supported by probable cause in order to comport with the Fourth Amendment. Instead, an officer may perform such a stop if he has a reasonable and articulable suspicion that a suspect has committed a criminal offense. *See Terry v. Ohio*, 392 U.S. 1 (1968); *Hayes v. Florida*, 470 U.S. 811, 816 (1985). For example, when a Border Patrol Agent has reasonable suspicion to suspect a person of entering the country illegally, he may briefly stop that person and inquire into his citizenship and immigration status. *United States v. Brignoni-Ponce*, 422 U.S. 873, 884-885 (1975). However, the stop "must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *Id*. at 881-82. Law enforcement officers must also diligently pursue their investigation to confirm or dispel their suspicions quickly during an investigative stop. *United States v. Sharpe*, 470 U.S. 675, 686 (1985).

Here, Vasquez-Corrales concedes that Agent Clare's initial questioning of him at the location where he was found was supported by *Terry*. At that point, the agent's questioning of Vasquez-Corrales was non-custodial. *United States v. Montero-Camargo*, 177 F.3d 1113,

1121-22 (9th Cir.) (questions asked of motorist regarding alienage of driver and passengers constituted routine non-custodial pre-arrest questioning), *amended by* 183 F.3d 1172, *withdrawn by* 192 F.3d 946 (1999), *reinstated by* 208 F.3d 1122, 1228 n.8 (2000). However, he argues that once he had been directed by Agent Clare to walk back to the transport vehicle, any statements must be suppressed because he was not first advised of his *Miranda* rights. The Court agrees.

Agent Clare's actions from the conclusion of the initial questioning and the commencement of the second round of questioning by Agent Steinkuller leave no doubt that Vasquez-Corrales, when he was questioned for the second time, was "in custody" for purposes of *Miranda*.[2] Under *Miranda*, statements that are the product of interrogation not preceded by appropriate warnings are inadmissible if the accused was questioned while "in custody or otherwise deprived of his freedom of action in a significant way." *Miranda v. Arizona,* 384 U.S. 436, 444 (1966). "A defendant is in custody when, based upon a review of all the pertinent facts, 'a reasonable innocent person in such circumstances would conclude after brief questioning he or she would not be free to leave.'" *United States v. Wauneka*, 770 F.2d 1434, 1438 (9th Cir.1985). In circumstances involving alienage, the test is further refined to allow consideration from the viewpoint of the reasonable person who is an alien. *United States v. Beraun-Panez*, 812 F.2d 578, 581 (9th Cir. 1987).

During the initial questioning, Vasquez-Corrales told Agent Clare that he was from Mexico and that he was in the United States illegally. At that point, there is little doubt that Agent Clare had probable cause to arrest Vasquez-Corrales. Rather than formally arresting him immediately, Agent Clare ordered Vasquez-Corrales to walk toward his service vehicle which was at least a mile away. At that point, a reasonable person in Vasquez-Corrales's position would believe he was in custody. He had answered the agent's questions about his

---

[2] In fact, Agent Clare testified that Vasquez-Corrales was not free to leave during the walk back to the vehicles, and Agent Steinkuller testified that, during questioning to obtain information for Form I-826, Vasquez-Corrales was in custody.

alienage and was then told to follow the agent. Even though Agent Clare's thoughts are not relevant to the reasonableness inquiry, *Berkemer v. McCarty*, 468 U.S. 420, 442 (1984), it is telling that the agent would not have allowed Vasquez-Corrales to leave.

When Vasquez-Corrales arrived at Agent Clare's vehicle, he was greeted by three additional agents, two on ATVs and a supervisor and he was directed to sit on an ATV trailer. Certainly if he was not in custody before, Vasquez-Corrales certainly was not free to leave after being told to sit on the trailer. Notwithstanding, Vasquez-Corrales was questioned again without the benefit of *Miranda* warnings. The Form I-826 clearly elicited incriminating information about his country of origin and where and when he entered to the United States. (Exhibit 1.) Such questioning constitutes interrogation that is reasonably likely to elicit incriminating responses. *Rhode Island v. Innis*, 446 U.S. 291, 302, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). Consequently, all statements contained in Form I-826 were taken while Vasquez-Corrales was in custody and without the benefit of *Miranda* warnings. As such, they should be excluded at trial. *See, e.g., Dickerson v. United States*, 530 U.S. 428, 441-42, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000).

### III.     RECOMMENDATION FOR DISPOSITION BY THE DISTRICT JUDGE

Based on the foregoing, the Magistrate Judge recommends that the District Court, after an independent review of the record, **GRANT** Defendant Jose Guadalupe Vasquez-Corrales's Motion to Suppress (Doc. 22) to extent described above.

Pursuant to 28 U.S.C. §636(b), any party may serve and file written objections within 14 days after being served with a copy of this Report and Recommendation. If objections are not timely filed they may be deemed waived. The parties are advised that any objections filed are to be identified with the following case number: **CR 11-02342-TUC-DCB**.

DATED this 5th day of April, 2012.

_____
Jacqueline Marshall
United States Magistrate Judge